UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JAMES PAUL SUMMERS,

                         Defendant.

**DECISION AND ORDER**
10-CR-138S

## I. INTRODUCTION

Presently before this Court is a Motion for Compassionate Release by pro se Defendant James Paul Summers, which the government opposes.[1]  See 18 U.S.C. § 3582 (c)(1)(A).  For the reasons below, Summers's motion is denied.

## II. BACKGROUND

On June 1, 2011, Summers pleaded guilty to four counts of a superseding indictment charging him with multiple violations of 18 U.S.C. §§ 2251 (a) (production of child pornography) and 2252A (a)(5)(B) (possession of child pornography).  See Docket Nos. 28, 29.  About 10 months later, on March 14, 2012, this Court sentenced Summers to 15-year terms of imprisonment on each of the three production counts, to be served consecutively, and a 10-year term of imprisonment on the possession count, to be served concurrently with his sentences on the production counts.  See Docket Nos. 45, 48.  This Court also imposed a lifetime term of supervised release.  Id.   Summers is presently

---

[1] Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Since Summers is proceeding pro se, this Court has considered his submissions and arguments accordingly.

serving his sentence at Butner Medium II FCI.[2]

On February 8, 2024, Summers filed a motion seeking compassionate release (sentence reduction) under 18 U.S.C. § 3582 (c)(1)(A)(i).  See Docket Nos. 86, 89, 91, 93-98.  Reading his submissions liberally, he also seeks a hearing.[3]  See Docket No. 94, p. 6 (requesting "a video court session pertaining to my compassionate release").  Summers argues that release is warranted because (1) the Bureau of Prisons is inadequately treating his medical conditions (hand injury and headaches); (2) his sentence is disparate as compared to other offenders; (3) he has been abused by inmates and staff; (4) his sentence has been compounded by the COVID-19 pandemic; and (5) he is a low risk for recidivism.[4]  The government opposes the motion.  See Docket No. 90.

### III. DISCUSSION

**A.     Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[5] provides as follows:

>  The court may not modify a term of imprisonment once it has

---

[2] See https://www.bop.gov/inmateloc/ (last visited October 28, 2024).

[3] This Court previously denied Summers's request for assignment of counsel.  See Docket No. 87.

[4] Summers's submissions contain lengthy recitations of his time incarcerated at FCI Otisville, MCFP Springfield, FCI Schuykill, and FCI Lewisburg.  Any conditions-of-confinement claims arising from his incarceration at those facilities are moot, because he is no longer housed in any of them.  Such claims will therefore not be addressed herein.

[5] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, 611 F. Supp. 3d 1, 2 n.1 (S.D.N.Y. 2020) (explaining the First

been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is warranted after consideration of the applicable 18 U.S.C. § 3553 (a) factors and consistent with any applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020); United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is not jurisdictional, but rather, is a claim-processing rule that may be waived or forfeited by the government. See United States v. Saladino, 7 F. 4th 120, 121-124 (2d Cir. 2021) (per curiam). If invoked, however, the exhaustion requirement must be enforced because it is a mandatory claim-processing rule. See id. at 125 (Menashi, J., concurring); see also United States v. Schultz, 454 F.

_____

Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

3

Supp. 3d 217, 223-24 (W.D.N.Y. 2020).  The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress initially delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13, Application Notes.

But notably, the Second Circuit has held that U.S.S.G. § 1B1.13 does not apply to compassionate-release motions brought directly by defendants, such as this one, and no longer constrains a district court's consideration of what qualifies as extraordinary and compelling reasons for purposes of such motions.  See United States v. Brooker, 976 F.3d 228, 234-37 (2d Cir. 2020) (holding that U.S.S.G. § 1B1.13 applies only to motions brought by the Bureau of Prisons).  The circuit court further held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate

4

release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id.; see also United States v. Jones, 17 CR 214 (CM), 2021 WL 4120622, at *1-2 (S.D.N.Y. Sept. 9, 2021).

As to the required consideration of the 18 U.S.C. § 3553 (a) factors, they include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).  Included in this calculus is whether the defendant may pose a danger to the safety of any person or to the community if released (the need to protect the public from future crimes).

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

**B.     Summers's Motion for Compassionate Release**

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Here, Summers maintains that he has exhausted his administrative rights, and the

government does not contend otherwise.  See Motion, Docket No. 86, p. 2 (setting out exhaustion); Medical Records, Docket No. 86-4, pp. 180-184 (submission made to warden).  This Court therefore finds that exhaustion is complete.

### 2.  Extraordinary and Compelling Reasons for Sentence Reduction

Summers first maintains that his medical and physical conditions constitute extraordinary and compelling reasons to grant a sentence reduction.  Summers suffered a crush injury to his right hand, along with injuries and lacerations to his right thumb and wrist, all of which cause functional limitations.  He also suffers from a vascular headache condition and other minor conditions, such as high blood pressure and low vitamin D.  Summers claims that the Bureau of Prisons has inadequately treated these conditions.  The government does not dispute the nature or severity of Summers's medical and physical conditions, but it maintains that the Bureau of Prison is adequately treating him.

This Court's review of the voluminous medical records submitted in support of Summers's motion reveals the existence of the alleged conditions and the consistent treatment of those conditions, albeit not necessarily to Summers's satisfaction.  The Bureau of Prisons has consistently provided treatment for Summers's right hand, including surgery, and has sent Summers for occupational therapy, scheduled him for medical assessments and procedures, and worked to address his complaints.  It has also provided medication and care for his headache condition, which Summers concedes but describes as "lackadaisical."  See Motion, Docket No. 86, p. 17.

While Summers objects to the timeliness and sufficiency of his medical care, he does not deny that the Bureau of Prisons is actively providing him treatment, even transferring him to a medical facility for occupational therapy during the pendency of this

motion.  His contention is simply that he could receive better treatment if released.  See

Motion, Docket No. 86, p. 4 ("The reason that I am asking this Court for a Compassionate

Release/Sentence Reduction is I want better medical care th[a]n what I am receiving.");

id. p. 14 (requesting release to "receive better medical care pertaining to a serious

functional impairment"); Letter Submission, Docket No. 94, p. 4 (stating that "the BOP is

not performing the medical care that I need and what I would get if I am not in prison").

Summers's desire for better medical treatment, while understandable, is not an

extraordinary reason justifying release or a sentence reduction.  Whether there has been

negligence, delay, or simply disagreement over proper treatment, nothing in the record

demonstrates that Summers is receiving medical care so inadequate as to warrant his

release, particularly given the severity of his criminal conduct (discussed below) and the

length of the sentence imposed.  See United States v. Mejia, 18-CR-557 (VSB), 2021 WL

2554593, at *5 (S.D.N.Y. June 22, 2021) (finding that defendant failed to establish that

inadequate medical treatment warranted compassionate release).

Consequently, while Summers has established medical conditions requiring

treatment, he has not established that the Bureau of Prisons' response to his conditions

constitutes an extraordinary and compelling circumstance requiring a sentence reduction.

See United States v. Martinez, 10-CR-233S (1), 2022 WL 1089671, at *3 (W.D.N.Y. Apr.

12, 2022) (finding sentence reduction unwarranted where Bureau of Prisons was treating

the defendant's serious eye and back conditions, albeit not to the defendant's liking);

United States v. Saleh, No. 93CR181, 2020 WL 3839626, at *5 (S.D.N.Y. July 8, 2020)

("While this Court is cognizant of [Defendant's] need for medical care, that need alone is

insufficient to warrant compassionate release, especially given the severity of his criminal

conduct.").

Summers next argues that a sentence reduction is warranted to avoid sentencing disparities.  He maintains that other offenders in child pornography cases received lesser sentences, citing cases involving sentences of between 180 months' and 480 months' imprisonment.  See Motion, Docket No. 86, pp. 27-28.  But Summers makes no showing that any of those cases involved a defendant with a history of abducting or attempting to abduct young children who later possesses and produces child pornography, specifically targeting a previously victimized child because she stayed silent about her past abuse. He thus fails to establish that his sentence was disparate from similarly situated defendants with similar criminal records.

To be sure, Summers received a lengthy sentence—45 years of imprisonment in the aggregate.  But he earned that sentence through his "shocking" conduct, for which he displayed a complete lack of empathy at sentencing for the suffering he caused.  See Sentencing Transcript, Docket No. 57, pp. 11, 13.

Summers was a consumer and trader of child pornography.  He shared child pornography via email and on multiple image- and video-sharing sites.  Id. ¶¶ 8, 11, 12, 20.  After he was discovered sharing videos of prepubescent females engaged in sex acts on YouTube, a search of his apartment yielded a haul of child pornography kept on all forms of media and devices.  See Presentence Investigation Report, Docket No. 46, ¶¶ 8, 10.  Law enforcement discovered three cell phones, a camera, a digital camera keychain, multiple floppy disks, two computers, memory cards, and 41 compact discs.  Id. ¶¶ 10, 11.  These devices contained approximately 25 video files and more than 600 image files depicting child pornography, some involving bondage and sadistic or

masochistic conduct.  Id. ¶¶ 13, 15, 61.  Also discovered in Summers's apartment were a folder containing nude photographs of children, a BabyTalk magazine,[6] a sheet of nude photographs of young girls, handcuffs, knives, and various swords and similar weapons. Id. ¶¶ 10, 11.

Summers also produced child pornography.  He admitted to photographing his roommate's 6-year-old niece, whom he specifically targeted because she had previously been sexually abused and did not tell anyone.  Id. ¶ 21.  Four illicit pictures of her were discovered: two depict her on separate occasions wearing no pants and lifting her shirt to expose herself; two depict Summers's fingers pulling the girl's pants and underwear back to expose her vagina.  Id. ¶ 16.  The victim looks distressed in each photograph.  Id. Summers admitted that he kissed and hugged this girl, but denied further molesting her. Id.

Summers separately victimized an 8-year-old girl.  Pictures of her in Summers's car were discovered.  Id. ¶ 17.  The victim is again wearing no pants and is lifting her shirt to expose herself.  Id.  One photograph is a close-up of the girl's vagina; one depicts Summers pulling the girl's pants down to expose her vagina; and two photographs depict the girl exposing her vagina and breasts.  Id.  Summers denied molesting this girl, but printed the pictures of her and kept them in a folder.  Id. ¶¶ 18, 22.

This deplorable conduct must further be viewed against the backdrop of Summers's criminal history, which includes kidnapping and multiple attempted kidnappings of young girls.  Id. ¶ 80.  Summers pulled a 4-year-old girl out of a tent in her

---

[6] Among the videos in Summers's possession were some from a website identified as *Diaper World*.  See Presentence Investigation Report, ¶ 13.  These videos depicted young girls between the ages of 5 and 7 wearing diapers and sucking on pacifiers.  Id.

backyard where she had been camping with her 8-year-old brother.  Id.  He took her to the corner of the house and removed her clothes before she screamed, causing Summers to flee.  Id.  Ten days later, Summers donned a mask and approached a 10-year-old girl who had been sleeping in a tent behind her home.  Id.  He instructed the girl to remove her shirt at knifepoint, but fled soon after.  Id.  Several weeks later, again wearing a mask, Summers pried open a window and entered his neighbor's house at 4:00 a.m.  Id.  He lifted a sleeping 9-year-old girl from the couch, but dropped her and fled when she screamed.[7]  Id.  Finally, Summers abducted a 4-year-old girl from her home in the middle of the night and then abandoned her in a nearby field.  Id.  She was found with her diaper removed and her shirt on inside out.  Id.

For this abhorrent conduct, this Court imposed the 15-year terms of imprisonment on each of the production counts to run consecutively.  This was a Guidelines sentence supported by careful consideration of the sentencing factors set forth in 18 U.S.C. § 3553 (a), one that was fair, just, and reasonable in light of the seriousness of the offense conduct and Summers's criminal history.  None of the cases Summers identifies involve similar circumstances such that there exists a sentencing disparity constituting an extraordinary and compelling reason warranting a sentence reduction.  Indeed, the Second Circuit has upheld sentences of this magnitude in egregious child pornography cases.  See, e.g., United States v. Brown, 843 F.3d 74 (2d Cir. 2016) (upholding 720-month sentence imposed for producing and possessing child pornography); United States v. Rafferty, 529 F. App'x 10 (2d Cir. 2013) (summary order) (upholding 720-month

---

[7] Disturbingly, two photographs of this female as an adult were discovered among Summers's seized image files, one of her driver's license and one of her leaning over a counter.  See Presentence Investigation Report, ¶ 23.

sentence imposed for producing and possessing child pornography); United States v. Pattee, 820 F.3d 496 (2d Cir. 2016) (upholding 564-month sentence imposed for producing, distributing, and possessing child pornography); United States v. Oehne, 698 F.3d 119 (2d Cir. 2012) (per curiam) (upholding 540-month sentence imposed for producing and distributing child pornography).

Next, Summers argues that he should be released because corrections officers at FCI Tucson verbally abused him in 2017 and 2018 and an inmate at FCI Otisville assaulted him in 2021. Summers is no longer housed at either of these facilities. While unfortunate, these past incidents do not constitute extraordinary and compelling reasons to grant a sentence reduction.

Summers further argues that the harsh conditions of confinement caused by the global COVID-19 pandemic, specifically the staff shortages, lockdowns, and other restrictions employed to combat the spread of the disease, constitute an exceptional and compelling reason warranting release or sentence reduction. But Summers does not allege any unique conditions that only he suffered. He instead relies on the general circumstances experienced by all inmates, which do not constitute extraordinary and compelling circumstances warranting relief. See United States v. Salvatore, 11-CR-359S, 2024 WL 1651700, at *5 (W.D.N.Y. Apr. 17, 2024) (rejecting argument that general conditions of confinement during the pandemic warrant relief); United States v. Farmer, No. 19-CR-427 (LTS), 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) ("While the Court is sympathetic to the poor conditions many prisoners have faced during the pandemic, generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release."); United States v. Bryant, No. 06-CR-17-LTS, 2021

11

WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (finding that generalized conditions of confinement during the pandemic "are not unique to [defendant] and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction"); cf. United States v. Ramirez, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021) ("If the challenging conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction."); but see United States v. Lora, 16 Cr. 44-5 (KPF), 2022 WL 1055749, at *5 (S.D.N.Y. Apr. 8, 2022) (finding that "pandemic-induced conditions of confinement *may* constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic" (emphasis in original)).

Finally, Summers argues that his age (43) and attendant reduction in risk of recidivism warrants relief. There is, however, nothing remarkable about Summers's age or the general notion that an individual's risk of recidivism may decrease with age, and certainly nothing extraordinary and compelling warranting a sentence reduction. See United States v. Terhaar, 10-CR-296S, 2022 WL 819061, at *5 n.7 (W.D.N.Y. Mar. 18, 2022) (rejecting age and decreased risk of recidivism arguments); United States v. Curry, 03-CR-167S (1), 2021 WL 5194685, at *4 (W.D.N.Y. Nov. 9, 2021) (same).

Accordingly, for these reasons, this Court finds that Summers has failed to demonstrate circumstances, viewed singly or in combination, that constitute an extraordinary and compelling reason for compassionate release.

### 3. Consideration of the § 3553 (a) Factors

Even if Summers had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are greatly outweighed by consideration of the § 3553 (a) factors, and that Summers's original sentence would be severely undermined by a sentence reduction.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 426.

The nature and circumstances of Summers's offense conduct are egregious, as explained above.  He possessed hundreds of images and videos depicting child pornography and produced his own by abusing trust and taking sexually explicit photographs of two young girls for his own personal pleasure, one of whom was particularly vulnerable because she had previously been sexually abused.  Summers's targeting and premediated revictimization of that young child was particularly cruel.  It must also be noted that the search of Summers's apartment yielded handcuffs, knives, and other weapons, which harkens years back to when Summers demanded that a 10-year-old girl remove her shirt at knifepoint.

Summers's personal history and characteristics are unfortunate.  He was born to biological parents who physically and sexually abused him.  See Presentence Investigation Report, ¶ 94.  The severity of the abuse required the termination of their parental rights, but Summers was soon adopted, and he maintained a good relationship with his adoptive parents.  Id. ¶ 95.  From there, it appears that Summers had a fairly unremarkable childhood and adolescence.  He was never married and has no children. Id. ¶ 106.

In considering the purposes of sentencing, this Court reiterates its previous finding

that a 540-month sentence is fair, just, and reasonable, and further finds that the sentence would be severely undermined by any sort of reduction, including to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction could also result in unwarranted sentencing disparities among egregious sex offender cases. Id.

Finally, as to dangerousness, which is considered in conjunction with the need to protect the public from future crimes by the defendant, this Court finds that Summers would pose a clear and present danger to the community if released. As detailed above, Summers manipulated and preyed on particularly vulnerable victims. He also has a highly disturbing and dangerous criminal past, having previously abducted or attempted to abduct four young girls. This Court therefore has little trouble concluding that Summers poses a danger if released.

Accordingly, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction (compassionate release) under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Summers's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Summers's Motion for Compassionate Release (Docket No. 86) is DENIED.

FURTHER, that Summers's Request for a Hearing (Docket No. 94, p. 6) is

DENIED.

FURTHER, that the Clerk of Court is DIRECTED to send a copy of this decision to

Summers at his correctional institution of record.

SO ORDERED.


Dated:        October 28, 2024
              Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge